IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Beverage Distributors, Inc., et al.,

    Plaintiffs,

  v.                      Case No. 2:08-cv-827

                              JUDGE WATSON

Miller Brewing Company, et al.,

    Defendants.

Muxie Distributing Co., Inc.,

    Plaintiff,

  v.                      Case No. 2:08-cv-931

MillerCoors LLC, et al.,      JUDGE WATSON

    Defendants.

Esber Beverage Company,

    Plaintiff,

                            Case No. 2:08-cv-1112
  v.

                              JUDGE WATSON

Miller Brewing Company, et al.,

    Defendants.

Dayton Heidelberg
Distributing Co.,

    Plaintiff,             Case No. 2:08-cv-1131

  v.

                              JUDGE WATSON

Coors Brewing Company, et al.,

    Defendants.

| | |
|---|---|
| Tramonte Distributing Co., | : |
| Plaintiff, | : |
| | Case No. 2:08-cv-1136 |
| v. | : |
| MillerCoors LLC, et al., | : JUDGE WATSON |
| Defendants. | : |

| | |
|---|---|
| Metropolitan Distributing Company, et al., | : |
| | : |
| Plaintiffs, | Case No. 2:09-cv-0022 |
| | : |
| v. | JUDGE WATSON |
| | : |
| Molson Coors Brewing Company, et al., | |
| | : |
| Defendants. | : |

OPINION AND ORDER

These consolidated cases will ultimately present a single legal issue for the Court to decide: is the joint venture known as MillerCoors LLC a "successor manufacturer" which "acquire[d] or is the assignee of a particular product or brand of alcoholic beverage from" the companies that make Miller and Coors beers and associated brands? If so, under Ohio's Alcoholic Beverage Franchise Act, MillerCoors was permitted to terminate any franchise distributor of those brands simply by giving notice within ninety days of the acquisition or assignment. O.R.C. §1333.85(D). If not, the only way MillerCoors may terminate a franchise distributor is for just cause. See O.R.C. 1333.85.

MillerCoors believes that this is a simple legal issue which can be decided on the basis of two key documents - the joint venture agreement which created MillerCoors, and the agreement

under which it conducts its business (the Amended and Restated
Operating Agreement of July 1, 2008).  The plaintiffs, all
franchise distributors of Miller or Coors products or associated
brands, do not believe the matter is quite so straightforward.
Rather, they think the issue has a substantial factual component
to it, and that they are entitled to do some discovery in order
to flesh that out.

This dispute has come to a head early in the case because
MillerCoors moved for summary judgment before any discovery was
conducted.  At the Court's urging, the parties tried to reach an
agreement about allowing the distributors to do some discovery
before responding to the motion.  They could not do so.  The
distributors, invoking Fed.R.Civ.P. 37 and 56(f), filed a motion
which, if granted, would force MillerCoors to provide discovery
and extend the distributors' time to respond to the summary
judgment motion until after the discovery occurs.  For the
following reasons, the Court will grant the distributors' motion
in part.

I.

The key statutory provision involved in this case, O.R.C.
§1333.85(D), reads in full as follows:

> If a successor manufacturer acquires all or
> substantially all of the stock or assets of another
> manufacturer through merger or acquisition or acquires
> or is the assignee of a particular product or brand of
> alcoholic beverage from another manufacturer, the
> successor manufacturer, within ninety days of the date
> of the merger, acquisition, purchase, or assignment,
> may give written notice of termination, nonrenewal, or
> renewal of the franchise to a distributor of the
> acquired product or brand. Any notice of termination or
> nonrenewal of the franchise to a distributor of the
> acquired product or brand shall be received at the
> distributor's principal place of business within the
> ninety-day period. If notice is not received within
> this ninety-day period, a franchise relationship is

> established between the parties. If the successor
> manufacturer complies with the provisions of this
> division, just cause or consent of the distributor
> shall not be required for the termination or
> nonrenewal. Upon termination or nonrenewal of a
> franchise pursuant to this division, the distributor
> shall sell and the successor manufacturer shall
> repurchase the distributor's inventory of the
> terminated or nonrenewed product or brand as set forth
> in division (C) of this section, and the successor
> manufacturer also shall compensate the distributor for
> the diminished value of the distributor's business that
> is directly related to the sale of the product or brand
> terminated or not renewed by the successor
> manufacturer. The value of the distributor's business
> that is directly related to the sale of the terminated
> or nonrenewed product or brand shall include, but shall
> not be limited to, the appraised market value of those
> assets of the distributor principally devoted to the
> sale of the terminated or nonrenewed product or brand
> and the goodwill associated with that product or brand.

There are other provisions of this same statute which pertain to its interpretation. In particular, §1333.85(B)(2) says that "[t]he restructuring, other than in bankruptcy proceedings, of a manufacturer's business organization" is not just cause for terminating a franchise, and §1333.85(B)(4) says that "[a] manufacturer's sale, assignment, or other transfer of the manufacturer's product or brand to another manufacturer over which it exercises control" is also not just cause. According to Judge Graham of this Court, these two provisions "are instructive with respect to the legislature's intent to prohibit certain conduct and its understanding of the term 'successor manufacturer'" which appears in §1333.85(D). <u>InBev USA LLC v. Hill Distributing Co.</u>, Case No. 2:05-cv-298 (S.D. Ohio April 3, 2006), slip op. at 13. As Judge Graham also noted, <u>see id.</u>, "[t]hese provisions demonstrate clear legislative intent to deny manufacturers the ability to terminate franchises due to corporate reorganizations or the shifting of brands among

entities under common control."

MillerCoors seems to agree that the issue of control is paramount.  In the summary judgment motion, it asserts as a fact the proposition that "MBCo and Coors [the two joint venture partners] transferred their part of the Brands to MillerCoors, a new entity *that is self-governed and is not controlled by either MBCo or Coors*."  Doc. #43, at 16 (emphasis supplied).  Building on that factual assertion, MillerCoors argues that this "real change in control" requires the Court to find, as a matter of law, that it is a "successor manufacturer" under §1333.85(D). Id. at 17.

The distributors, although they have not responded directly to this argument yet, will probably not take great issue with the proposition that *if* there has been a "real change in control" over the brands in question, MillerCoors may be a "successor manufacturer."  What they do dispute, however, is how the Court should decide whether a "real change in control" has taken place.

MillerCoors tells the Court that it can make this factual finding simply by looking at the two key documents to see whether the joint venture partners gave up control over their brands to the newly-formed entity.  The statement of facts which it puts forth at pp. 4-7 of its summary judgment motion is little more than a summary of the provisions of the Amended and Restated Operating Agreement.  The implication of this argument - which MillerCoors makes directly in its opposition to the motion to compel - is that the Court needs no other facts to decide the issue.

The distributors, on the other hand, argue that the agreements may be the starting point of the analysis, but they are not the ending point.  The bulk of their requested discovery, and the gist of their motion to compel, is focused on the questions of "how MillerCoors is operating on a day-to-day basis,

-5-

who is making the decisions, what control the [joint venture partners] have over those decisions, [and] what reporting is done to [those partners]...." Motion to Compel, Doc. #74, at 18. They describe these questions as "fact-intensive," id. at 8, and they assert that there may well be a difference between how MillerCoors was intended to operate - a question that might be answered by the written agreements - and how it actually operates. If that difference exists, and if the operations of MillerCoors are actually being controlled by the joint venture partners (referred to by the distributors as the "Brewers"), the Court could not find that MillerCoors is a "successor manufacturer." Going a step further, the distributors argue that as long as there is a genuine factual dispute about how MillerCoors operates, the Court should not grant summary judgment to MillerCoors, and the only way for the distributors to be able to argue, in good faith, that this fact is in dispute is to allow them to conduct discovery on this issue.

II.

Generally, when the Court becomes involved in the parties' discovery disputes, the issue is whether the requested discovery is relevant to a claim or defense of a party. To decide that issue, the Court must analyze whether any particular piece of information requested in discovery would either be admissible evidence on some disputed factual issue in the case, or be reasonably calculated to lead to the discovery of admissible evidence. See Fed.R.Civ.P. 26(b)(1). When a motion to compel is combined with a motion under Fed.R.Civ.P. 56(f), a second layer of analysis is sometimes needed. That is, the Court must decide not only that the requested information is discoverable under the Rule 26(b)(1) standard, but also that the party who will be opposing the summary judgment motion has shown "by affidavit that, for specified reasons, it cannot present facts essential to

-6-

justify its opposition ...." The most commonly specified reason is the need to do discovery, and that is the reason advanced by the distributors here.

When the summary judgment motion is directed to fewer than all of the claims and defenses in the case, the scope of information that is relevant to the motion (and thus potentially the subject of discovery needed to oppose it) may well be different than the scope of information that can be discovered under Rule 26(b)(1). The latter information is that which is relevant to all claims and defenses, and some of it may not be relevant to a limited summary judgment motion which addresses fewer than all of the claims and defenses that the parties have asserted. However, when a summary judgment motion is, as here, directed to the *only* issue in the case - that is, whether MillerCoors is a "successor manufacturer" under O.R.C. §1333.85(D) - the scope of discovery allowed by Rule 26(b)(1) and the information relevant to the issue raised in the motion are virtually identical. Of course, that does not necessarily mean that the party seeking a continuance under Rule 56(f) is always entitled to complete (or even conduct) discovery on the merits before opposing a motion of this type.

There are at least two reasons why a Court might deny a party time to conduct discovery before opposing a summary judgment issue that seeks judgment on the only issue in the case. First, the party may have at his or her disposal enough evidence to create a factual dispute without doing any, or any more, discovery. Many times, a party who was also an eyewitness to, or a participant in, the occurrence which gives rise to the lawsuit is able to present an affidavit which contradicts the other side's version of the pertinent facts. In that case, although additional discovery is almost certainly available under Rule 26(b)(1), the party opposing the summary judgment motion does not

need to do that discovery before responding to the motion.

A second, and somewhat less common, scenario, arises when a summary judgment motion is predicated upon a legal argument that, if accepted by the Court, would render any discovery (or at least the discovery being sought by the other party) simply unnecessary. For example, if the only issue in the case is how to interpret a written contract, one party may move for summary judgment and argue that the contract is unambiguous, so that the Court can construe it based upon the wording of the contract alone. If the Court were to accept that argument, the Court would not consider any external aids to interpretation, such as parol evidence about the intent of the parties, which might be produced during discovery. However, the moving party may well concede that if the Court does not accept the proposition that the contract is unambiguous, discovery will eventually be appropriate. Nevertheless, by filing the motion, that party is in essence seeking an early ruling that its position about the lack of ambiguity in the contract is correct. When responding to a motion like that, the task of the opposing party is not to argue that *if* parol evidence will be admitted, that evidence will be in dispute, but to argue that, as a matter of law, the contract is ambiguous and therefore can be interpreted only in light of the evidence that has yet to be developed.

A threshold question the Court must answer here is whether MillerCoors' motion is this second type of motion. In one sense, it may be. MillerCoors is certainly arguing that the Court should decide all factual issues in this case concerning who has "real control" of its operations based on the language of the two agreements, and nothing else. If that were its argument, and it had precisely articulated it in that fashion, the distributors might not need any discovery to oppose the motion. Rather, they could fairly meet that assertion by persuading the Court -

-8-

through legal, rather than factual, arguments - that questions about corporate control which arise under §1333.85(D) must also take into account the real world operations of the alleged "successor manufacturer" and not just the way its operations are defined on paper.  The Court could then decide that narrow issue - that is, if the Ohio legislature intended the "successor manufacturer" question to be decided solely with reference to the legal documents creating and governing the new entity, or if it intended the courts to take into account the way in which such entities actually conduct their business.  If it reached the latter conclusion, the Court would simply deny summary judgment because no facts relating to the issue of actual control have yet been developed.  Discovery would then proceed on the factual issues.

In its briefing on the motion to compel and continue, however, MillerCoors takes the position that the facts which the distributors seek to develop through discovery are legally irrelevant to the "successor manufacturer" issue - and not just for purposes of the pending summary judgment motion, but as it relates to the case as a whole.  In other words, MillerCoors argues not only that this information is not pertinent to the grounds upon which it has moved for summary judgment, but that it will never be relevant, even if there were to be a trial on the merits.

The Court concludes that MillerCoors does not want to limit its summary judgment motion to a request that the Court decide only the question of what type of record a Court must consider in deciding that issue.  Rather, it has invited the distributors to argue not just that a more complete record must be developed before the issue is ripe for deciding, but has also invited them to contest its factual assertions concerning who has control over MillerCoors' day-to-day operations.  It is those latter

assertions which the distributors would need discovery in order to rebut, because the information about those daily operations can only be obtained from MillerCoors.  Consequently, the issue of what type of record the Court can and should have before it in deciding the "successor manufacturer" issue turns out to be the key question that the Court must resolve in deciding  the motion to compel and to continue.  Stated another way, if the Ohio legislature intended a court to take into account both the written instruments which set up a new entity and how that entity actually conducts its business before deciding if it is a "successor manufacturer," both discovery on that question and a continuance of the summary judgment proceedings will be needed.

III.

The Ohio's Alcoholic Beverage Franchise Act itself would appear to be a logical place to start the analysis.  There is not much in there which speaks to the question of how one party to a distribution franchise proves that it has transferred its rights to a true "successor manufacturer," or how the distributor proves the opposite.  Section 1333.85(B)(4) uses the words "another manufacturer over which it exercises control" as a way of describing an entity that would not qualify as a successor manufacturer, but the term "successor manufacturer" is not otherwise defined, and there is nothing in the statute that says what a court may or may not take into account in determining whether the prior manufacturer does, or does not, exercise control over the new one.  However, the phrase "exercises control" is fairly broad, and would seem to encompass both situations where the prior manufacturer has control on paper, and situations where, regardless of who has paper control of the new entity, the prior manufacturer still "exercises" control.

Reading that phrase broadly also seems consistent with the intent of the statute.  Like other franchise acts (for example,

the Ohio Motor Vehicle Dealers Act, O.R.C. §4517.01 et seq.), the Alcoholic Beverage Franchise Act is designed in part to protect distributors from certain practices of beverage manufacturers. It recognizes that distributors often have a substantial investment in their businesses, including the physical assets and real property used to distribute the manufacturers' products, and that to allow a manufacturer unilaterally to terminate a franchise agreement puts the franchise distributors at great risk of harm. The just cause requirement for terminating a franchise agreement is intended to protect the franchisee from this type of arbitrary and potentially coercive act.

If the exception to the just cause requirement for successor manufacturers were read narrowly, and the proceedings about compliance with that provision were confined to a review of documents alone, it would be too easy for a manufacturer to set up a new entity which, on paper, looks like a business that is not under the control of its predecessor, while at the same time exercising control over the new entity by disregarding the language of the written instruments that purported to transfer control. Before the franchisee is deprived of what the Ohio legislature clearly regards as an important right not to lose the franchise for insufficient reasons, the franchisee ought to be entitled to test the reality of any transaction that might result in the loss of the franchise. Thus, the Court simply cannot accept MillerCoors' argument that information about how it operates, and in particular how either of the joint venture partners have input into its operations, is legally irrelevant. Rather, that appears to be the core issue in the case. That being so, discovery on that issue is certainly permitted by Rule 26(b)(1), and, because the issue of who controls MillerCoors is presented in the summary judgment motion, such discovery should precede the distributors' response to the motion.

IV.

The Court does note that MillerCoors suggests in its opposing memorandum that because the distributors have been able to point to some publicly-available evidence that MBCo or Coors might be controlling MillerCoors, they do not need any discovery to create a factual dispute on this point. That suggestion carries little weight. In all likelihood, if that evidence were presented in some admissible format in response to the summary judgment motion, MillerCoors would argue that it is insufficient proof of its lack of independence from its joint venture partners or lacking in trustworthiness since it would not have come from sources with first-hand knowledge. Thus, the distributors are entitled to find out from more reliable sources - that is, from MillerCoors itself - how the important operational decisions are made and who makes them.

This does not necessarily mean, however, that the distributors are entitled to all of the discovery they have asked for before they have to file their response. Rule 56(f) entitles them to a continuance that is long enough to acquire some evidence on that issue, but not necessarily all of it. Further, if they have asked for additional discovery that may have some peripheral relevance to the issues here, but does not bear directly on the control issue, that discovery would not necessarily have to be done within the time frame set for responding to the motion. With these principles in mind, the Court has examined the motion to compel and makes the following observations, some of which will take the form of an order, and some of which will be suggestions to the parties which may lead to agreements about discovery to be conducted in the future.

From the above discussion, it should be apparent that, in the Court's view, the most relevant discovery is that which focuses on the day-to-day operations and decision-making at

MillerCoors. One of the issues raised in the motion to compel is what time limitations should apply to discovery. If MillerCoors did not begin operations as a separate entity until July 1, 2008, that date cannot serve as a cutoff date for discovery. The distributors are clearly entitled to conduct discovery, including at least one Rule 30(b)(6) deposition, about how MillerCoors has made key operational decisions since it began operations. To the extent that other documents, such as the ones described in the motion as having been identified in the Amended and Restated Operating Agreement or as sales or marketing plans (see sections III(B)(4) and (5) of the motion to compel), also reveal the extent to which either of the joint venture partners have, or may exercise, control over MillerCoors' operations or strategic plans, these documents would also appear relevant and necessary.

The issue about the Department of Justice documents is less clear. First, it seems evident that the reason the Department of Justice asked to review documents concerning the proposed joint venture is not directly related to the Ohio law issue raised in this case, so that any overlap between documents produced to the DOJ and documents relevant to the "successor manufacturer" question would be largely coincidental. Second, MillerCoors denies that it reneged on any agreement to produce these documents, stating instead that it would be more cost-effective for it to produce any DOJ documents from scratch than to reproduce this exact production, and that it was undertaking efforts to do that. Without some further definition of what is in the DOJ document production, however, the Court cannot direct even the reproduction of these documents *en masse*, other than to state that if they shed light on the way in which MillerCoors was intended to conduct business they may have some relevance. To the extent that they address issues such as market share, pricing, and other antitrust concerns, however, they may not be,

and the existence of a protective order does not transform such information into relevant evidence.  Further, this may be the type of information that might become relevant to some issue in the case at a later date, but would not seem to be needed in order for the distributors to address the summary judgment motion.

Finally, the distributors have asked for documents that reflect financial transactions or other types of contractual arrangements between and among the joint venture partners and entities related to those two companies, such as Molson Coors. They argue that these documents will shed light on the operations of the partners themselves which, in turn, may reveal something about the partners' relationship with MillerCoors.  That proposition strikes the Court as, at the very least, debatable. Perhaps by taking discovery directly from MillerCoors, it may become more apparent that there is some relationship between how that entity operates and how its partners conduct operations vis-a-vis their related companies.  If that should occur, some discovery along those lines may be justified.  Again, however, it does not seem that such discovery would have to be either begun or completed before the distributors would have enough information to create a dispute about who controls MillerCoors if, in fact, there is a dispute to be had on that subject.

Given all of this, it seems to make the most sense to ask the parties to revisit their discussions about the timing and content of discovery now that they have some guidance from the Court as to what is legitimately in play.  Hopefully, they will now be able to agree on a scope of discovery, both documentary and otherwise, that will allow the promptest possible response to the summary judgment motion to occur.  They should either submit a schedule for such discovery, and a proposed response date, to the Court within two weeks, or advise the Court that a conference

will be needed to accomplish that task.

V.

Based on the foregoing, the motion to compel and continue (#74) is granted in part. Plaintiffs are granted a continuance of the response date to the pending summary judgment motion pursuant to Fed.R.Civ.P. 56(f). They are also entitled to some of the discovery they have requested in order to respond to the motion. The parties shall confer after receiving this order about scheduling that discovery and setting a date for the response to the summary judgment motion. If that process does not produce an agreed order within two weeks, they shall contact the Court for further guidance.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge